for 1-0-0-8-0-1, and re B.H., B. Hudson, for the Appellant, Sarah Mayo, and for the Appellate, James Makers. May I please report, counsel? Your Honors, we are here today on a decision adjudicating the parental rights of my client with respect to his child, the minor child, B.H. The trial court made the determination that the child was neglected and then awarded custody of the minor child to DCFS. We are here today to present argument to this court as to the reasons why the decision of the trial court must be reversed. First and foremost, relying on the decision in the Supreme Court's case of N. Ray Arthur, Appellant doesn't dispute that B.H. was neglected. The record is replete with evidence that the mother was neglectful of the child. The mother had six other children, all of which had been removed from her care and custody over the course of the years. What the Appellant disputes today is the court's dispositional hearing wherein the minor child was taken from my client, respondent, Mr. Hudson, and given over to the care of DCFS. There are a number of reasons why the decision of the trial court was wrong in this instance. The first is that the decision was against the manifest weight of the evidence. It's against the manifest weight of the evidence because the state failed to meet its burden in this case. It failed to prove by a preponderance of the evidence that my client would provide an injurious environment for this child. Therefore, the trial court lacks sufficient evidence to determine that the child would be neglected in the care and custody of my client. I point to N. Ray Arthur, and specifically to Justice Garmon's dissent, wherein she notes that the majority of the court got the holding right. That first we determine whether the child is neglected, and that neglect only applies to the child. But then the next step is the dispositional hearing wherein the court determines whether there is a parent that is ready, willing, able, and fit to take care of that child. In this case, I submit to this court that the trial court's determination that the father was not fit was in error. How about able? Able? Your Honor, and that is absolutely part of the problem with this case. There wasn't sufficient evidence presented on my client to the court to determine whether he was able to care for the child. DCFS allowed my client one two-hour visit a week to care for this child. Now this child is admittedly a disabled child that requires special care and has special needs. My client is a new father with a baby that has a disability. DCFS allowed him one two-hour visit per week. One two-hour visit per week to learn how to care for this disabled child. And then they said that he was unable to care for the child because he wasn't able to learn to do all of the things that the foster parent could do when the foster parent had the child in her care and custody for 24-7, all the time. Moral of the story is that feeding is pretty important. Being able to feed the child is pretty important. Absolutely, I agree. And I don't think there's any evidence in the record that says that my client could not have learned how to feed that child. I think that it wasn't a fair trial for my client to give him two hours a week with this child and then say, well, you don't know how to feed him. Well, maybe there's no evidence in the record that he even needed to be fed during that two-hour time period. How about changing the diaper? There's further no evidence in the record that the diaper needed to be changed. And in fact, there's evidence in the record that the child had trouble emptying himself. So it's plausible, entirely plausible, that the diaper never needed to be changed. The fact is they never gave him a chance to show that he could do those things. They never gave him a four-hour time period, say, where he would have to feed that child, where he would have to change that child. He had two hours once a week. And he never missed a visit, Your Honors. He was there every time, and he repeatedly asked for more time with his child. He repeatedly... Did members of the department try to teach him these things? I believe they did, Your Honor. Was he able to learn them? Your Honor, I don't know that it's a question of whether he's able to learn them. I think that it's a question of, we have to put ourselves in my client's shoes. And here, he's never had a child taken from him. These people are coming saying, we're taking your baby. We don't think you can do it. And they're going to ramrod down his throat how we think you should care for this child. I mean, just imagine if somebody was doing that to you. I think you would be a little on the defensive, too. I think it was a matter of communication and needing to learn how to communicate with this father better, to teach him we're not at odds. We're not adverse to you. We want to help you with this baby. And I don't see any evidence in the record that DCFS made that approach. Moreover, and most importantly, and I think rather appalling, is that DCFS refused to go see his house. There's evidence in the record, the hearing I believe in September 23rd, I think was the date, 2010, where the new DCFS caseworker said, well, the old one just wouldn't go see it. She just wouldn't go see his house. Well, how can you say that he's going to provide an injurious environment when you haven't even went to look at the house to see where this child would be kept? I think that's unfounded. There's no way. Well, wasn't the determination of injurious environment more based on his abusive substances than it was the physical condition of the abode? I think that's true to some extent. But, Your Honor, again, given the fact that my client wasn't given sufficient time with this child to show that he could be a parent, I think that it all ties together. You know, with respect to abusive substances, it's all based on my client says. My client says, but nobody ever saw him drunk with this child. Nobody ever saw him exhibiting signs of intoxication with this child. Well, if I admit that I robbed the bank, I don't see why there's any need for testimony by the state to bring in the teller saying, yeah, that's the guy that robbed the bank. Well, it depends on who you made the statement to and in what context. Look, we all know it's a matter of degree. My client says, yes, I drink alcohol. Well, I would venture to guess that most people in this room drink alcohol. That doesn't mean that people in this room cannot take care of their child. So I think, yeah, it is a matter of degree. And this is something that does require proof because it's not like robbing a bank where either you did it or you didn't. This is how much, when, where. Is it affecting your ability to care for this child? And there's no evidence in the record that he couldn't. He wasn't given a chance. He wasn't given a chance, and the state put on no competent evidence that he was unable to care for this baby. And again, I go back to, I just cannot believe DCFS wouldn't even look at his house. You know, if they had looked at his house, what if there are people there that can help him care for this child? We don't know who else would be involved in this child's life. He could have had a great family network and support, and this child would be just fine with the father. But the father wasn't given a chance because it appears from the record that the father was lumped with the mother. I think we can all agree that the mother shouldn't have this child. But there's competent evidence in this record that the mother and the father were not living together. Moreover, I would direct Your Honor, and specifically to Justice Appleton's comment, to the case of Faith B. And I know that that case deals with mental illness, but I think it parallels here with drug use. In that case, the court said that it's not enough to find that the parent is mentally ill. There must be some nexus between the mental illness and the neglect or the injurious environment for the child. And I think in this case, the same holds true. There must be some nexus between the drug use and the parent's inability to care for the child, and that wasn't established. Well, the other thing that kind of concerns me about the posture of this case is that this is not a termination case. I mean, the field is still wide open for your client to work with PCFS and establish his ability to take care of the child. Right? I understand that, sir. I understand that it's only a dispositional hearing, but the problem is that in the past, DCFS has shown that it's going to refuse to work with my client. I'm well acquainted with the railroad and how that works. Yeah. And that's the problem. You know, at least give him a chance to parent his child. If he can't do it, it would be under supervision. You know, there's nothing wrong with having a social worker there to help him, to help him through learning how to feed the child, but at least give him a chance. Well, my point is that at this juncture of the case, he's not out of the ballpark yet. That's true. He can still prove or he can attempt to prove and at least make enough effort so a record can be made that these are the things I've done to prove myself competent to parent. And then if he's unsuccessful, then we've got actually something to review. And at this point, you know, we don't have that much to review in terms of the facts. Exactly, and I would submit that's because DCFS, just as Your Honor said, has railroaded him and has prevented him from proving himself. He's consistently asked for more time with this child. Always, you can look at the record, please give me more time, please give me more time, and they consistently say no, no, no. And it's supervised visits, so there's no reason for them to deny him access to his child. Why did they deny access to the child? It was based on the drug use, as I recall. Well, Counsel, your standard of review is manifest way, correct? Yes, sir. You've got the drug issue, you've got the drinking issue, and you've got the feeding issue. And possibly the changing issue, although you did indicate maybe the need changed. How do we get around the standard? I think you get around the standard because the state failed to meet its burden. The state had to produce enough evidence, a preponderance of the evidence, for the court to make a determination. And in this case, the state produced insufficient evidence. There's no evidence of some of these things other than what DCFS says. There's no investigation. So your client's admission as to cannabis use in the six-pack a day, that's not evidence that the court should have considered? I'm not saying that at all. What I'm saying is there's no evidence that that was impairing his ability to take care of this child. If there's no further questions, I'll rest at this time. Okay, you'll have rebuttal. Thank you. Thank you. Thank you. Mr. Major? May I please accord counsel? I think the court's covered everything I would have said. I'll just try to answer any questions. I don't have any questions. Thank you. Thank you. Not much to rebut, but we'll give you a couple minutes. Is there an objection? Because this really would not be rebuttable. I think we've covered everything. If the court has any further questions, I'm happy to answer them otherwise. Thank you. Thank you. Case is submitted.